UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| SAFE CREDIT SOLUTIONS, INC. & RAY TEJADA<br><br>*Plaintiffs*<br><br>vs.<br><br>THE CREDIT PROS INTERNATIONAL CORP.<br><br>*Defendant*. | CASE NO: 1:17-cv-21602 |

## AMENDED COMPLAINT

Plaintiffs, Safe Credit Solutions, Inc., and Ray Tejada (collectively, "Plaintiffs"), file this Amended Complaint for a declaratory judgment against Defendant, The Credit Pros International Corp. ("Defendant"), and in support state:

## INTRODUCTION

1. Plaintiff, Ray Tejada, is a former employee of Defendant and current employee of Plaintiff, Safe Credit Solutions, Inc.

2. Plaintiffs seek a declaratory judgment that the non-compete, non-disclosure, and non-solicitation agreement Mr. Tejada entered with Defendant is unenforceable.

## JURISDICTION AND VENUE

3. This is an action between citizens of different states. Plaintiffs are citizens of Florida and Defendant is a citizen of New Jersey.

4. The matter in controversy exceeds the sum of $75,000.00, exclusive of interest, attorneys' fees and costs.

5. Subject matter jurisdiction exists under 28 U.S.C. § 1332(a).

6. Defendant is subject to personal jurisdiction in the State of Florida because it conducts continuous and systematic business activities within the State of Florida.

7. For purposes of venue, Defendant is deemed to reside in this district under 28 U.S.C. § 1391(b)(2).

## PARTIES

8. Plaintiff, Ray Tejada, is a resident of the State of Florida.

9. Plaintiff, Safe Credit Solutions, Inc. ("Safe Credit"), is a New York corporation with its principal place of business located in North Miami Beach, Florida.

10. Defendant, The Credit Pros International, Corp. ("CPI" or "Defendant"), is a New Jersey Corporation with its principal place of business located in Newark, New Jersey.

## FACTUAL ALLEGATIONS

11. Mr. Tejada is the former vice-president of CPI. Prior to joining CPI, he built a successful career in sales management, with an emphasis on teaching skills and techniques to salespeople and grooming sales teams.

12. Safe Credit and CPI were respectively founded in 2009. Both companies are credit repair organizations ("CROs") that provide credit repair services to consumers nationwide.

13. CROs, such as CPI and Safe Credit, are subject to numerous federal regulatory statutes, including 15 U.S.C. §1679, the Credit Repair Organizations Act ("CROA").

14. CROA was enacted to protect consumers. CROA authorizes CROs to provide a number of services to consumers, mainly attempting to improve a consumer's credit record, credit history, or credit rating. This generally requires CROs to provide advice and assistance to consumers, meet with credit consultants, and send correspondence to creditors.

15. CROA prohibits CROs from: (a) making or using any untrue or misleading representations of the services of the credit repair organization, (b) receiving payment for services not yet performed, and (c) preventing the accurate display of a consumer's credit history.

16. CROA requires CROs to enter into a written contract with consumers in order to perform services on their behalves.

17. There are two primary methods CROs use to gain customers: (1) online marketing and (2) publishers. Both CPI and Safe Credit utilize online marketing and publishers.

18. Through online marketing, CROs typically create websites and use search-engine optimization to raise result-placements for given search terms on internet search engines (Google, Bing, Yahoo!, etc.).

19. Publishers call potential customers and put them in contact with CROs. Publishers typically have non-exclusive relationships with CROs.

20. The vast majority of the United States credit repair services market is controlled by CROs Lexington Law and CreditRepair.com. The marketing, platforms, pricing, techniques and strategies of these two entities are emulated by virtually all smaller credit repair service companies

### Mr. Tejada's Employment with The Credit Pros International

21. In 2009, Mr. Tejada joined CPI after working in sales management for nearly twenty (20) years.

22. Mr. Tejada worked his way up CPI's corporate chain, from a salesman to Vice President.

23. One of Mr. Tejada responsibilities was to train the sales team and new employees.

24. On or about February 23, 2016, CPI forced Mr. Tejada to sign a Non-Compete, Non-Disclosure and Non-Solicitation Agreement (the "Agreement") as a condition of his continued employment. *See* Exhibit A.

25. The Agreement contained a broad non-compete restriction that prohibits Mr. Tejada from engaging in any credit repair services in any territory where CPI conducts business or plans to conduct business throughout the world.

26. The Agreement also contained a broad non-solicitation restriction that prohibits Mr. Tejada from doing business with any of CPI's clients or any person or individual with whom Mr. Tejada had contact during his employment with CPI.

27. Mr. Tejada moved to Tampa, Florida in February 2017. CPI executives indicated that they supported Mr. Tejada's move and continued employment with CPI as a consultant.

28. Initially, Mr. Tejada intended to render remote training services and coaching to CPI sales teams, but CPI repeatedly failed to provide him with training schedules and materials to carry out his work.

29. Members of CPI's management team repeatedly failed to respond to voicemails and messages sent by Mr. Tejada regarding his work.

30. Without CPI's assistance, Mr. Tejada was unable to render training services.

**Mr. Tejada Leaves The Credit Pros International and Joins Safe Credit Solutions**

31. Mr. Tejada and CPI severed ties in late February or early March 2017.

32. By mid-March 2017, Mr. Tejada began working with Safe Credit.

33. Safe Credit rendered credit repair services for nearly eight (8) years prior to hiring Mr. Tejada.

34. To comply with CROA's regulatory requirements, Safe Credit carefully developed its sales materials, including sales scripts.

35. Safe Credit does not utilize CPI's sales script to sell Safe Credit's services to potential customers. Instead, Safe Credit utilizes its own seven-part sales script.

36. Safe Credit does not utilize CPI's manuals, policies, or customer contracts.

37. Mr. Tejada has not utilized or provided Safe Credit with CPI's client lists or any other allegedly confidential CPI information or trade secrets.

38. On March 23, 2017, counsel for CPI sent separate cease and desist letters to Plaintiffs. *See* Composite Exhibit B. These letters indicated that:

    a. CPI was represented by counsel;

    b. Mr. Tejada may be in possession of CPI's "proprietary scripts"; and

    c. CPI would take legal action against Plaintiffs to enforce the Agreement unless Safe Credit fired Mr. Tejada, Plaintiffs returned all information deemed confidential/proprietary by CPI, and Safe Credit and Mr. Tejada each paid CPI $50,000.00.

39. There presently exists a justiciable controversy regarding enforceability of the Agreement.

## COUNT I – DECLARATORY JUDGMENT
**Declaratory Judgment that the Agreement's Restrictive Covenants Are Unenforceable**

40. Plaintiffs repeat and reallege Paragraphs 1-39 as if fully set forth herein.

41. The restrictive covenants contained in the Agreement are not necessary to protect CPI's confidential information, substantial customer relationships or any other legitimate business interest.

42. CPI did not provide Mr. Tejada with extraordinary or specialized training.

43. Safe Credit independently operated in the credit repair industry for nearly eight (8) years prior to any involvement with Mr. Tejada.

44. As a result of Safe Credit's years of experience in the credit repair industry, Safe Credit acquired extensive knowledge regarding the industry and regulatory compliance. During this time, Safe Credit developed a widespread network of customers.

45. Due to the highly-regulated nature of the credit repair industry, there is no valuable or confidential CPI information that Mr. Tejada could provide to Safe Credit that it could not otherwise obtain or learn in the normal course of operating its own business.

46. CROs operate principally within the highly-regulated purview of the CROA, which dictates how the customer relationship is formed and continued. There are no substantial client or customer relationships.

47. The restrictive covenants are not necessary to protect any legitimate business interests of CPI. As such, they are unenforceable at law.

48. Instead, the Agreement and CPI's threatened legal action against Mr. Tejada and Safe Credit serves only to restrain trade.

49. CPI's threatened enforcement of the Agreement also places an undue hardship on Mr. Tejada. His move to Florida was predicated on the belief that CPI would continue to

provide him with resources necessary to carry out his job duties. Instead, CPI failed to provide Mr. Tejada with adequate job resources.

50. A dispute exists between Plaintiffs and Defendant regarding the validity and enforceability of the restrictive covenants contained in the Agreement.

51. There exists a bona fide controversy that flows out of Defendant's assertion that Mr. Tejada is bound by the terms of the Agreement's restrictive covenants in this instance.

52. The controversy involves the legal relationship of the parties, having adverse interest with respect to which the declaration is sought.

53. Accordingly, there exists an actual, practical, and present need for a declaration of Plaintiffs' rights under 28 U.S.C. § 2201.

WHEREFORE, Plaintiffs request entry of a declaratory judgment that the restrictive covenants contained in the Agreement are unenforceable; and all additional relief this Court deems just and proper.

Dated: June 5, 2017　　　　　　　　　　　　　　Respectfully submitted,

By: s/ *David J. Yaffe*

David J. Yaffe
Florida Bar No.: 125488
dyaffe@pollardllc.com

Jonathan E. Pollard
Florida Bar No.: 83613
jpollard@pollardllc.com

**Pollard PLLC**
401 E. Las Olas Blvd. #1400
Fort Lauderdale, FL 33301
Telephone: 954-332-2380
Facsimile: 866-594-5731
*Attorneys for Plaintiffs Safe Credit Solutions, Inc. and Ray Tejada*

## CERTIFICATE OF SERVICE

I HERBY CERTIFY that on June 5, 2017, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send electronic notification to all CM/ECF participants in this case.

*s/ David J. Yaffe*
Attorney

## SERVICE LIST

Anthony G. Franqui, Esq.
tony@ftlawgroup.com
FRANQUI TOTTEN, LLP
Brickell Bayview Center
80 S.W. 8th Street, suite 2000
Miami, FL 33130
Tel: 305-423-7011
Fax: 305-470-7433
*Attorney for Defendant The Credit Pros International Corp.*