Patrick D. Tobia, Esq.
MORGAN MELHUISH ABRUTYN
5651 W. Mt. Pleasant Avenue
Suite 200
Livingston, N.J. 07039
Tel:     (973) 994-2500
Fax:     (973) 994-3375
ptobia@morganlawfirm.com

Attorney for Defendant- Counterclaimant
THE CREDIT PROS INTERNATIONAL CORP.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAFE CREDIT SOLUTIONS, INC. and RAY TEJADA<br><br>   Plaintiffs,<br><br>   vs.<br><br>THE CREDIT PROS INTERNATIONAL CORP.,<br><br>   Defendant- Counterclaimant | *Document Filed Electronically*<br><br>Civil Action No.  2:17-cv-04723- JMV-MF<br><br><br>**ANSWER AND VERIFIED COUNTERCLAIM**|

Defendant THE CREDIT PROS INTERNATIONAL CORP ("Defendant" or "Credit Pros") files this Answer and Verified Counterclaim against Plaintiffs SAFE CREDIT SOLUTIONS, INC. ("SCS") and RAY TEJADA ( "Tejada") as follows:

## ANSWER

## INTRODUCTION

1.      Defendant admits the allegations of this paragraph.

2.      The allegations of this paragraph state a legal conclusion and therefore defendant makes no response thereto.

## JURISDICTION AND VENUE

3.      Defendant admits the allegations of this paragraph.

4.      Defendant does not believe that plaintiffs have any damages and therefore denies the allegations of this paragraph. Defendant's damages on the Counterclaim set forth below exceed the sum of $75,000.00, exclusive of interest, attorneys' fees and costs.

5.      Defendant admits the allegations of this paragraph.

6.      The allegations of this paragraph state a legal conclusion and therefore defendant makes no response thereto.

7.      The allegations of this paragraph state a legal conclusion and therefore defendant makes no response thereto.

## PARTIES

8.      Defendant admits the allegations of this paragraph.

9.      Defendant admits the allegations of this paragraph.

10.     Defendant admits the allegations of this paragraph.

## **FACTUAL ALLEGATIONS**

11.     Defendant admits that Tejada is the former Vice-President of Credit Pros but is without knowledge sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

12.     Defendant admits that it was founded in 2009 and that it and SCS are both credit repair organizations ("CROs") that provide credit repair services to consumers nationwide but is without knowledge sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

13.     Defendant admits the allegations of this paragraph.

14.     Defendant states that the statute referenced in this paragraph speaks for itself. Defendant admits that CROs provide services to consumers attempting to improve a consumer's credit record, credit history, or credit rating which generally requires CROs to provide advice and assistance to consumers, meet with credit consultants, and send correspondence to creditors.

15.     Defendant states that the statute referenced in this paragraph speaks for itself.

16.     Defendant states that the statute referenced in this paragraph speaks for itself.

17.     Defendant admits that some of the methods that CROs use are online marketing and publishers to obtain clients.  Defendant is without knowledge sufficient to form a belief as to the truth of the remaining allegations of this paragraph as to what services SCS uses.

18.     Defendant admits that through online marketing CROs can create websites and use search-engine optimization to raise result-placements for given search terms on internet search engines.

19.     Defendant admits that publishers can call potential customers and put them in contact with CROs. Defendant is without knowledge sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

20.     Defendant denies the allegations of this paragraph.

### Mr. Tejada's Employment with The Credit Pros International

21.     Defendant denies that Tejada joined Credit Pros in 2009**.** Tejada began work for Credit Pros in 2011. Defendant is without knowledge sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

22.     Defendant admits that Tejada worked his way up Credit Pros' Corporate chain, from a salesman to Vice President.

23.     Defendant admits that one of Tejada responsibilities was to train the sales team and new employees.

24.     Defendant admits that on or about February 23, 2016 Tejada signed a Non-Compete, Non- Disclosure and Non-Solicitation Agreement (the "Agreement") as a condition of his continued employment. Defendant denies the remaining allegations of this paragraph.

25.     Defendant states that the Agreement speaks for itself and admits that it contains a non-compete restriction that prohibits Tejada from engaging in any credit repair services in any

territory where Credit Pros conducts business or plans to conduct business throughout the world.

26.     Defendant states that the Agreement speaks for itself and admits that the Agreement contains a non-solicitation restriction that prohibits Tejada from doing business with any of Credit Pros' clients or any person or individual with whom Tejada had contact during his employment with Credit Pros.

27.     Defendant admits that Tejada stated that he was moving to Tampa, Florida in February 2017. Defendant admits that Credit Pros' executives indicated that they supported Tejada's move and his continued employment with Credit Pros.

28.     Defendant denies the allegations of this paragraph.

29.     Defendant denies the allegations of this paragraph.

30.     Defendant denies the allegations of this paragraph.

## Mr. Tejada Leaves the Credit Pros International and Joins Safe Credit Solutions

31.     Defendant admits the allegations of this paragraph.

32.     Defendant is without knowledge sufficient to form a belief as to the truth of the allegations of this paragraph.

33.     Defendant is without knowledge sufficient to form a belief as to the truth of the allegations of this paragraph.

34.     Defendant is without knowledge sufficient to form a belief as to the truth of the allegations of this paragraph.

35.     Defendant is without knowledge sufficient to form a belief as to the truth of the allegations of this paragraph.

36.     Defendant is without knowledge sufficient to form a belief as to the truth of the allegations of this paragraph.

37.     Defendant denies the allegations of this paragraph.

38.     Defendant states that the letter referenced in this paragraph speaks for itself, but otherwise admits that the allegations of this paragraph summarize the referenced letter.

39.     Defendant admits the allegations of this paragraph.

## COUNT I – DECLARATORY JUDGMENT

### Declaratory Judgment that the Agreement's
### Restrictive Covenants Are Unenforceable

40.     Defendant repeats and re-alleges it answers to Paragraphs 1-39 as if fully set forth herein.

41.     Defendant denies the allegations of this paragraph.

42.     Defendant denies the allegations of this paragraph.

43.     Defendant denies the allegations of this paragraph.

44.     Defendant denies the allegations of this paragraph.

45.     Defendant denies the allegations of this paragraph.

46.     Defendant denies the allegations of this paragraph.

47.     Defendant denies the allegations of this paragraph.

48.     Defendant denies the allegations of this paragraph.

49.     Defendant denies the allegations of this paragraph.

50.     Defendant denies the allegations of this paragraph.

51.     Defendant denies the allegations of this paragraph.

52.     Defendant denies the allegations of this paragraph.

53.     Defendant denies the allegations of this paragraph.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiffs fail to state a claim upon which relief may be granted.

### Second Affirmative Defense

Plaintiff SCS lacks standing to maintain the claims in the Amended Complaint.

### Third Affirmative Defense

Plaintiff SCS lacks privity of contract to maintain the claims in the Amended Complaint.

### Fourth Affirmative Defense

Plaintiffs' claims are barred by plaintiff Tejada's own breach of contract.

### Fifth Affirmative Defense

Plaintiffs' claims in the Amended Complaint are barred by the doctrine of waiver.

### Sixth Affirmative Defense

Plaintiffs' claims in the Amended Complaint are barred by the doctrine of unclean hands.

### Seventh Affirmative Defense

Plaintiffs' claims in the Amended Complaint are barred by the doctrine of estoppel.

{01337164}                              7

**Eight Affirmative Defense**

Plaintiffs' claims in the Amended Complaint are barred by the doctrine of equitable estoppel.

**Ninth Affirmative Defense**

Plaintiffs' claims in the Amended Complaint are barred by the plaintiff Tejada's own breaches of contract.

**Tenth Affirmative Defense**

Plaintiffs' claims in the Amended Complaint are barred by plaintiff SCS's intentional Interference with the Tejada/Credit Pros' contract.

**Eleventh Affirmative Defense**

Plaintiffs' claims in the Amended Complaint are barred by plaintiffs' own fraud, deceit and misrepresentation.

**Twelfth Affirmative Defense**

Defendant has not committed any breach of contact.

**Thirteenth Affirmative Defense**

The rights and remedies of the parties to this action are controlled by the laws of the State of New Jersey.

**Wherefore** defendant Credit Pros requests dismissal of plaintiffs' Amended Complaint with prejudice and with costs and attorney's fees assessed against plaintiffs.

**VERIFIED COUNTERCLAIM**

Defendant-Counterclaimant THE CREDIT PROS INTERNATIONAL CORP ("Defendant" or "Credit Pros") by way of Counterclaim against Plaintiffs SAFE CREDIT SOLUTIONS, INC. ("SCS") and RAY TEJADA ( "Tejada") alleges as follows

## OVERVIEW

1.      Credit Pros is a company that helps clients by assisting them in the removal of erroneous, inaccurate and unverifiable information from their credit history while educating them on how to avoid those mistakes in the future.

2.      Plaintiff Tejada is a former Sales Representative, Sales Manager, Director of Sales, Director of Client Services. a Vice President and a member of the Leadership Team for Credit Pros having started with Credit Pros in 2011.

3.      While employed by Credit Pros Tejada signed a Non-Compete, Non-Disclosure and Non-Solicitation Agreement ("Agreement").  *ECF No. 6* Amended Complaint **Exhibit A**.

4.      In December 2016 Tejada announced that he was leaving Credit Pros because he was moving to the Tampa, Florida area, presumably for personal reasons.

5.      Tejada's announced move to Tampa appears to be false as he is apparently living in the Miami, Florida area and working for Safe Credit Solutions, Inc. ("SCS"), a direct competitor of Credit Pros.

6.      Tejada accepted employment with SCS and SCS hired Tejada with knowledge of the Agreement.

7.      Tejada's employment with SCS violates the Agreement.

8.      Credit Pros sent SCS and Tejada a Cease and Desist letter dated March 23, 2017.  *ECF No. 6* Amended Complaint **Exhibit B**.

9.      SCS and Tejada refused to comply with Credit Pros' demands and instead filed a declaratory judgment action in federal court in Florida on April 28, 2017 seeking, among

other things, a declaration that the Agreement is not valid and not binding. *ECF No. 1*, Complaint ("Florida Action").

10.     The Florida Action has been transferred to the United States District Court in New Jersey by consent of the parties and by Order of the Court. *ECF No. 9* Order Transferring Venue.

11.     Credit Pros now files this Counterclaim seeks injunctive relief and damages against Plaintiff Tejada for violations of the Agreement and against SCS for injunctive relief and damages for tortious interference with contract.

## **PARTIES**

12.     Defendant/Counterclaimant Credit Pros is a New Jersey corporation doing business nationwide with its principal place of business located at 60 Park Pl #200, Newark, NJ 07102.

13.     Plaintiff SCS is a New York corporation with its principal place of business in North Miami Beach, Florida.

14.     Plaintiff Tejada is a Florida resident whose actual address is not known.

## **JURISDICTION AND VENUE**

15.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties. Credit Pros, as a defendant, and SCS and Tejada, as plaintiffs, are  citizens of different states, and the amount in controversy on the Counterclaim exceeds the sum or value of $75,000,  exclusive of interest and costs.

16.     Venue is proper in this Court under 28 U.S.C. § 1391(a) because at all relevant times, Tejada was an employee of Credit Pros and Credit Pros is headquartered and has its principal place of business in Newark, New Jersey in this judicial district.

17.     Additionally the Agreement at Paragraph 10 contains a mandatory Venue and Submission to Jurisdiction Clause, and the parties have consented to jurisdiction in this Court by virtue of a Joint Motion to Transfer Venue, (*ECF No. 8*) which resulted in the Order Transferring Venue. *ECF No. 9.*

## **FACTS SUPPORTING CREDIT PROS' VERIFIED COUNTERCLAIM**

### **Credit Pros' Business**

18.     Credit Pros was ranked by Inc. Magazine as one of America's 5,000 fastest growing companies 3 years running. It is a financial technology firm dedicated to improving the lives of its clients by assisting them in the removal of erroneous, inaccurate and unverifiable information from their credit history while educating them on how to avoid those mistakes in the future.

19.     Credit Pros has invested substantial resources into researching credit laws.  Credit Pros has sought out the nation's best FICO experts and consultants. Credit Pros has developed advanced methods and strategies to attack erroneous credit damage. Also Credit Pros has an extensive amount of technology/integrated systems.

20.     Credit Pros' customers  include persons from all over the United States.  (collectively, "Customers").

21.     Credit Pros' business is highly competitive, and the protection of Credit Pros' confidential, proprietary, and trade secret information is vital to prevent competitors or would-be   competitors from obtaining an unfair competitive advantage.

22.     Credit Pros invests substantial dollars annually in resources to develop its Customers, technology, systems, and products.

23.     To protect its investment, Credit Pros requires it employees to sign a Non-Compete, Non-Disclosure and Non-Solicitation Agreement (the "Agreement", *ECF No. 6* **Exhibit A.).**

## **Tejada's History of Employment with Credit Pros**

24.     Tejada was the first sales representative of Credit Pros hired in January 2011.

25.     Credit Pros grew quickly and Tejada became the sales director thereafter overseeing the sales reps hired after the date he started.

26.     In June 2013 Tejada had advanced to a position of leadership, was involved in high level corporate problem solving and was rewarded with an Incentive Agreement giving him a share of corporate revenue.  However, the Incentive Agreement never vested before he left Credit Pros.

27.     In April 2015 Tejada became the Director of the Client Support Department (Client Success Department) and Vice President of Credit Pros.  His protégé Albert Diodonet became the Director of Sales.

28.     In August 2015 Credit Pros fired an employee. Over the next few months, that employee began working for another credit repair company and began contacting Credit Pros' employees for jobs and proprietary information.  As a result of said former employee's

numerous efforts and persuasion, the two former employees of Credit Pros went to work for that credit repair company. The Credit Pros' management team, which Tejada was a member of, decided that Credit Pros needed all current employees and new hires to sign a non-compete, confidentiality and non-solicitation agreement. All members of Credit Pros signed such agreements shortly thereafter in February 2016 and Tejada executed his Agreement on February 23, 2016.  All new members of Credit Pros must sign that agreement to this day.

29.     In March 2016 Tejada moved back into a sales manager position because he stated that he missed being involved in sales which he claimed is his passion.

30.      In September 2016 Tejada had a conversation with Credit Pros' CEO about Tejada moving to Tampa, Florida to be with his girlfriend but still continuing to work for Credit Pros. Tejada stated that since his children were grown and his mother was now deceased he felt that he would be happier in Florida with his girlfriend and continue to work for Credit Pros.

31.     In December 2017 Tejada told both Credit Pros' CEO and its Director of Sales that the reason he was moving to Tampa, Florida was due to his kids being grown and his girlfriend "Freda".

32.     Tejada was a W-2 employee of Credit Pros until approximately December 16, 2016.

33.     Tejada also worked from the Newark, New Jersey Credit Pros' office as a 1099 employee coaching the sales team and new hires and creating sales training content from approximately 11/18/2016 – 2/10/17  and was paid over $10,000.00  during that time.

34.     In February 2017 Credit Pros' Director of Sales returned a phone call to Tejada (on speaker phone) while Credit Pros' CEO was present. Tejada stated during the conversation that

he was working with a company called "Credit Solutions". Tejada stated that their systems were not good, and that they needed a lot of help. Tejada stated that "Credit Solutions" company was at Credit Pros' "old stage", and that he would be assisting them with upgrading their capabilities. The conversation concluded with Tejada asking if everything was okay and stated that Credit Pros' Director of Sales "sounded funny".

### Tejada's  Non-Compete, Non-Disclosure and Non-Solicitation Agreement

35.     Tejada admits that he signed the Agreement as a condition of his continued employment with Credit Pros. *ECF No. 6*, Amended Complaint **Exhibit A** paragraph 24.

36.     The Agreement contains Restrictive Covenants at Paragraph 2.

37.     As for the Non-competition restrictions the Agreement provides that Tejada will not for one year following the termination of his employment with Credit Pros engage or participate in any competitive business:

> Non-Compete. Employee acknowledges that Company has legitimate business interests in protecting its Confidential Information, its customer relationships, training of its employees, its business goodwill, reputation and other lawful interests, and that the restrictive covenant regarding competition herein is reasonably necessary to protect these interests. Therefore, Employee agrees that during Employee's employment, and for a period of one (1) year following termination of Employee's employment (whether voluntary or involuntary, regardless of the reason), Employee will not, directly or indirectly (whether as owner, beneficial owner, partner, associate, agent, independent contractor, consultant. lender, employee, stockholder, officer or in any other capacity) engage or participate, on behalf of her or himself, or any person or entity other than Company, in any competitive Business (as it is defined above) in any location where Company presently conducts business, services clients or plans to conduct business or service clients in the future.

*ECF No. 6*, Amended Complaint **Exhibit A** paragraph 2.A.

38.     As for the Confidential Information restrictions the Agreement provides:

Confidential Information. Employee acknowledges that in the course of Employee's employment with Company, Employee will have access to certain confidential and proprietary information and data (including trade secrets) concerning the business and affairs of Company. Such confidential information includes, but is not limited to, information relating to Company's: methods of operation; business plans and projections; contracts and agreements; compensation plans; current or former clients, suppliers, vendors, referral sources or employees; prospective clients, customers, suppliers, vendors, referral sources or employees; pricing and financial information; current and prospective client lists and leads; information concerning the identities, social security numbers, addresses, locations,  contact personnel and phone numbers of clients, customers, suppliers, vendors and referral sources; operating and business plans and strategies; research and development; policies and manuals; and other documentation regarding any other individuals or entities with whom Company conducts business of any kind (collectively, "Confidential Information"). Employee acknowledges and agrees that the foregoing Confidential Information derives independent value from not being generally known to, and not readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. Employee further acknowledges and agrees that this Confidential Information has been the subject of efforts by Company which are reasonable under the circumstances to maintain its confidentiality.

*ECF No. 6*, Amended Complaint **Exhibit A** paragraph 2.B.

39.     As for the Non-solicitation of Clients Restrictions the Agreement provides:

Non-Solicitation of Clients: Employee agrees that during Employee's employment, and for a period of two (2) years following termination of Employee's employment (whether voluntary or involuntary, regardless of the reason), Employee shall not, directly or indirectly, through another person or entity: (i) solicit, market to or do business with any Client (as defined below) for purposes of providing services or products competitive with the Business of Company, or (ii) induce or attempt to induce any Client to cease doing business with Company or in any way interfere with the relationship between any such Client and Company. For purposes of this section, "Client" shall include any person or entity that was a client of Company or with whom Employee had contact during Employee's employment with Company.

 *ECF No. 6*, Amended Complaint **Exhibit A** paragraph 2.D.

40.     Tejada acknowledged that all of the Restrictive Covenants were reasonable and

necessary:

> F.      Reasonableness of Restrictive Covenants. Employee acknowledges that each of the provisions of this Section 2 are reasonable and necessary to protect the legitimate business interests of Company and that they do not impose an undue hardship on Employee.

*ECF No. 6*, Amended Complaint **Exhibit A** paragraph 2.F.

41.    The Agreement contains a Tolling Provision:

> G.      Tolling of Restrictive Period. The period of time during which Employee is prohibited from engaging in certain business practices pursuant to this Section 2 shall be extended by the length of time during which Employee is in breach of such covenants.

*ECF No. 6*, Amended Complaint **Exhibit A** paragraph 2.G.

42.    Credit Pros believes that Tejada was engaged in conversations with SCS regarding his employment with SCS from before he left Credit Pros' employment and that Tejada has taken with him Credit Pros' Confidential Information and has shared this Confidential Information with SCS.

43.    Tejada agreed to specific remedies, including injunctive relief and/or equitable relief, on a temporary or permanent basis, if he breached the Agreement:

> 4.      Remedies for Breaches of this Agreement. Employee acknowledges and agrees that any breach of the provisions of this Agreement shall cause Company irreparable injury and damage for which Company cannot be adequately compensated in damages. Employee therefore expressly agrees that Company shall be entitled to seek injunction and/or equitable relief, on a temporary or permanent basis, to prevent any anticipatory or continuing breach of this Agreement or any part thereof. Nothing herein shall be construed as a waiver of any right Company may have or hereafter acquire to pursue any other remedies available to it for such breach or threatened breach, including recovery of damages from Employee.

*ECF No. 6,* Amended Complaint **Exhibit A** paragraph 4.

44.     Tejada as a Credit Pros Sales Manager, Director of Sales and a Director of Client Services, was part of the senior sales leadership team responsible for leading the overall management of sales strategies, activities, operations, and  budgets associated with driving sales for the organization.

45.     Tejada regularly received, accessed, and possessed highly confidential and  sensitive business information of Credit Pros and its entire credit repair services, the disclosure  of which would cause irreparable harm to Credit Pros.

46.     This information includes but is not limited to the following areas:

        a.     Merchant account vendors where Credit Pros is at high risk so there is value in good relationships with favorable rates.

        b.     Marketing to Affiliate Partners, which includes what Credit Pros pays, the contacts within the relationships, conversion rates, and LTV (lifetime value) of clients per affiliate relationship.

        c.     Sales, which includes plan pricing, arrived at after significant time and money was invested by reviewing and analyzing many pricing models, conversion rates on certain pricing, and bundling of services added or taken away from plans and how it affects LTV and conversion

        d.     Pay structure which includes commission scale/quotas, salary/benefits and schedules for advertising campaigns across states and publishers.

        e.     Internal call flow and call scripts where Credit Pros has specific methods it has developed to direct the conversion which cost Credit Pros significant money to create and regularly update.

        f.     In the technology area Credit Pros has developed proprietary systems built to link with the lead form, including the bucketing of leads and how Credit Pros determines what reps get what calls, how campaigns are bucketed and the skills attributed to each.

g.      In the Client Success area Credit Pros has developed retention procedures.

h.      For the Credit Repair Product Credit Pros has developed and utilizes a Processing Department Layout, a Dispute Matrix, and a time frame of delivering each product Round.

i.      For its Vendor relationships Credit Pros has confidential Contacts and confidential cost information.

j.      For Training Credit Pros has developed and maintains onboarding curriculum for new hires, Meeting Cadences, Scorecards used for business metrics, sales modules and client success modules.

k.      Finally for Compliance Credit Pros has developed strategies for doing business (and not doing business) in certain states, as well as compliance procedures for scoring calls and corrective training based on the score.

47.    In addition to this highly Confidential Information, given his sales leadership position at Credit Pros, Tejada developed valuable customer and industry related contacts in the area of credit repair from across the country.

48.    Also in the course of his many years at Credit Pros, Tejada received specialized training that he could use to SCS's advantage, including Credit Pros market strategies, employee training and customer strategies, and proprietary product technologies.

49.    Tejada, armed with Credit Pros' Confidential Information, will be able to lead SCS's staff into the credit repair marketplace, which will put the information Tejada had access to directly at risk of benefiting a direct competitor, which is precisely what the Agreement prohibits..

50.    Finally, there is no question that SCS will benefit from Credit Pros' longstanding investment in Tejada' specialized training and development in this industry.

51.    Tejada' actions are in direct violation of his Agreement with Credit Pros.

{01337164}                                  18

52.     Accordingly, Tejada must be enjoined from continuing his employment with SCS.

53.     In exchange for executing the Agreement, Credit Pros promised to provide  and did provide  its employees, including Tejada, with access to its confidential and proprietary information, customer relationships, related goodwill, and valuable training programs in which Credit Pros has invested significant time, effort, and money.

54.     Because Tejada' responsibilities were nationwide in scope, so too was his  access to the Company's Confidential Information and customer relationships, the use of which  would disadvantage Credit Pros and advantage a competitor.

55.     Therefore, Tejada has always been on notice that his restrictions were  nationwide in scope.

**Tejada breached the Non-Compete, Non-Disclosure and Non-Solicitation Agreement by working for SCS, a Competitor of Credit Pros**

56.     Tejada is working for SCS and SCS competes with Credit Pros in the credit repair industry. SCS and Tejada are is seeking to gain an advantage in this market, which SCS prior to now has not effectively penetrated by hiring a long-time high level sales Director of Credit Pros with significant sales experience and access to Credit Pros' highly valuable Confidential Information.

57.     Tejada is working for and plans to continue to work for SCS -- a competitor -- in a position in which he could disadvantage Credit Pros and advantage SCS by using is knowledge of Credit Pros' Confidential Information, specialized training, and customer relationships and goodwill.

58.   The confidential, proprietary, and trade secret information that Tejada received from Credit Pros would undoubtedly cause irreparable harm if he is permitted to continue to work for SCS.

59.   Credit Pros is concerned about Tejada's actions and his continuing plans  in light of his integral relationship with Credit Pros over many years and his key role in the business including his suggesting and implementing the Non-Compete, Confidentiality and Non-Solicitation Agreements for all Credit Pros employees.

60.   Based on the foregoing, there is a heightened level of concern regarding the present situation with Tejada and his employment with SCS especially where there is evidence that Tejada is in possession of Confidential Information taken from Credit Pros in contemplation of the fact that he would be competing head-to- head with Credit Pros.

61.   Tejada' Agreement has a choice of law provision, pursuant to which Tejada and Credit Pros selected the laws of New Jersey as the governing law. *ECF No. 6*, **Exhibit A,** Amended Complaint paragraph 10.

62.   This choice of law provision is part of Credit Pros' need to protect its legitimate business interests and its nationwide operations with a uniform, national standard.

### SCS tortuously interfered with the Credit Pros'/Tejada Non-Compete, Non-Disclosure and Non- Solicitation Agreement by hiring Tejada

63.   SCS hired Tejada with knowledge of his Agreement with Credit Pros.

64.     SCS, who is not a party to Tejada's Agreement with Credit Pros, interfered with Tejada's Agreement with Credit Pros by hiring Tejada and upon information and belief, inducing Tejada to disclose to SCS Credit Pros' Confidential Information.

65.     SCS's interference was without justification and has caused damage to Credit Pros.

## COUNT ONE

## Breach of Contract – Against Tejada

66.     Credit Pros incorporates and re-states the averments set forth in paragraphs 1 through 65 of this Counterclaim above as though set forth herein and at length.

67.     The Agreement between Tejada and Credit Pros is a valid and enforceable  agreement. As a result of signing the Agreement Tejada was paid a significant salary and given training and access to Credit Pros' Confidential Information.

68.     The Agreement prohibits Tejada from working for a competitor in a position which would require him to use and/or disclose Credit Pros' confidential, proprietary, and  trade secret information.

69.     Tejada has breached and threatens to continue to breach the Agreement as a result of his new employment with SCS, Credit Pros' direct competitor, in a position where he will  inevitably use and disclose the Confidential Information to which he accessed and had possession  of while employed by Credit Pros.

70.     Tejada' actual and continued breach of the Agreement threatens immediate  and irreparable harm to Credit Pros.

71.     Tejada acknowledges this in the Agreement. *ECF No. 6*, **Exhibit A** Amended Complaint

paragraph 4**.**

72.     Credit Pros has no adequate remedy at law and will continue to suffer  substantial and immediate irreparable harm unless SCS and Tejada are enjoined as set forth below.

## COUNT TWO

### Breach of Covenant of Good Faith and Fair Dealing – Against Tejada

73.     Credit Pros repeats and realleges the allegations contained in Paragraphs 1 through 72 of this Counterclaim above as if set forth herein at length.

74.     In consideration for the commencement or continuation of their employment with Credit Pros Tejada entered into a contract with Credit Pros whereby he agreed not to:

a.     disclose Credit Pros' Confidential Information to anyone outside Credit Pros during and after  h i s  e mployment with Credit Pros; and

b.  work for  a  competitor  of  Credit Pros  within  one-year  after  the termination of his  employment with Credit Pros.

75.     Credit Pros performed its obligations under that Agreement by employing or continuing to  employ Tejada.

76.    Tejada breached his Agreement with Credit Pros by:

a.     Commencing  employment  with  SCS  –  a  competitor  of  Credit Pros  – within  one  year  (and  almost  immediately)  after  the  termination  of  their employment  with  Credit Pros;  and

b.     Upon  information  and  belief,  disclosing  Credit Pro's  Confidential Information, including information concerning Credit Pros' business and business

practices, to Credit Pros' competitor, SCS

77.    As such Tejada engaged in conduct, separate and apart from the performance of their obligations under the Agreement, without good faith, and for the purpose of depriving Credit Pros of its rights and benefits under the Agreement – i.e., the protection of its Confidential Information and preventing its former employees from working for its competitors for one year after the termination of their employment with Credit Pros.

78.    As a direct and proximate result of the T e j a d a ' s  breaching h i s covenants of good faith and fair dealing with Credit Pros, Credit Pros has been and will continue to be caused  damage in an amount to be determined at trial.

## COUNT THREE

### Breach of Duty of Loyalty – Against Tejada

79.    Credit Pros repeats and realleges the allegations contained in Paragraphs 1 through 78 above, as if set forth herein at length.

80.    Prior to the termination of his employment, Tejada owed a duty of loyalty to Credit Pros as Credit Pros was his employer. During Tejada's employment with Credit Pros, Tejada had a duty not to act contrary to Credit Pros' interests; not to compete with Credit Pros; and not to aid SCS, Credit Pros' competitor.

81.    Following the termination of his employment, Tejada owed a duty of loyalty to Credit Pros in accordance with his employment contract with Credit Pros (i.e., the Agreement). The Agreement prohibited Tejada from: (i) disclosing Credit Pros' Confidential Information to

anyone outside Credit Pros during and after his employment with Credit Pros, and (ii) working for a competitor of Credit Pros for one-year after the termination of his employment with Credit Pros.

82.     Tejada breached the duty of loyalty to Credit Pros by:

a.     Upon information and belief discussing Tejada's employment with SCS while still employed by Credit Pros;

b.     Upon information and belief interviewing with SCS – a competitor of Credit Pros – while Tejada still worked for, and was being paid by Credit Pros;

c.     Accepting employment with SCS while still employed by Credit Pros;

d.     Upon information and belief commencing employment with SCS in breach of his employment contract that prohibited employment with a competitor of Credit Pros for one-year after the termination of his employment with Credit Pros; and

e.     Upon information and belief, disclosing Credit Pros" Confidential Information, including information concerning Credit Pros' business and business practices, to Credit Pros' competitor, SCS.

83.     As a direct and proximate result of Tejada breaching their duty of loyalty to Credit Pros, Credit Pros has been and will continue to be caused damage in an amount to be determined at trial.

## COUNT FOUR

### Tortious Interference with Contract – Against SCS

84.     Credit Pros repeats and realleges the allegations contained in Paragraphs 1 through 65 above, as if set forth herein at length.

85.     Tejada entered into a contract with Credit Pros. This Agreement prohibited the Tejada from: (i) disclosing Credit Pros' Confidential Information to anyone outside Credit Pros during and after their employment with Credit Pros, and (ii) working for a competitor of Credit Pros for one-year after the termination of their employment with Credit Pros. SCS was not a party to the Credit Pros' and Tejada Agreement.

86.     SCS interfered with the Tejada Agreement by recruiting Tejada and, upon information and belief, inducing Tejada to disclose Credit Pros'Confidential Information to it.

87.     SCS intentionally interfered with the Tejada's Agreement with Credit Pros as it intentionally recruited Tejada and employed Tejada knowing that Tejada was subject to the Non-Compete, Non-Disclosure and Non-Solicitation Agreement.

88.      That interference was without justification.

89.      As a result of SCS's interference with the Tejada Agreement, Tejada breached his Agreement by commencing employment with SCS and, upon information and belief, by disclosing Credit Pros' confidential information to SCS.

{01337164}                                         25

90.      As a direct and proximate result of SCS's tortious interference with the Tejada's

Agreement with Credit Pros, Credit Pros has been and will continue to be caused damage

in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Credit Pros demands judgment in its favor and against Tejada and SCS,

individually, jointly and severally and  respectfully requests the following relief:

A.      Immediate, preliminary and permanent injunctive relief prohibiting Tejada

and SCS from violating the terms of the Agreement;

B.      Equitable relief pertaining to Tejada' breaches of contract and ill-gotten  gains,

including, but not limited to, immediate, preliminary and permanent injunctive relief;

C.      Actual damages that Credit Pros is entitled to recover as a result of Tejada'

breach of the Agreement;

D.      Actual damages that Credit Pros is entitled to recover as a result of SCS's

tortious interference with contract;

E.      Incidental and consequential damages as permitted by law;

F.      Exemplary damages as permitted by law;

G.      The costs of these proceedings;

H.       Attorneys' fees and costs incurred in enforcing the terms of the Agreement and

the claims against the parties.

I.      Any other relief deemed necessary by the Court to enforce the Agreement.

<u>/s/Patrick D. Tobia</u>

MORGAN MELHUISH ABRUTYN
Patrick D. Tobia, Esq., ID #033581985651
651 W. Mt. Pleasant Avenue
Suite 200
Livingston, N.J. 07039
Tel:     (973) 994-2500
Fax:    (973) 994-3375
ptobia@morganlawfirm.som
Attorneys for Defendant
THE CREDIT PROS INTERNATIONAL CORP.

Dated: August 9, 2017